

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00086-CV

_____

ANN BARTOSH, Appellant

V.

SAM HOUSTON STATE UNIVERSITY, Appellee

On Appeal from the 278th Judicial District Court
Walker County, Texas
Trial Court No. 21945

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

None would argue that Ann Bartosh and Martin Amorous agreed on religion. For some years, Bartosh was employed as slide librarian for the art department at Sam Houston State University[1] under the supervision of Amorous, the department head. Bartosh claims that her February 8, 2002, termination as a University employee was both religious discrimination[2] and retaliation for her earlier report to University officials alleging a hostile work environment[3] directed at her Christian faith. Bartosh pursues those two termination claims—disparate-treatment termination and retaliatory termination[4]—as well as her claim that she had been subjected to a hostile work environment because of her Christianity.

The University convinced the trial court to dismiss Bartosh's claims for disparate-treatment termination and hostile work environment on the basis that she failed to comply with administrative prerequisites, namely, by timely filing an administrative complaint on those claims. The University

[1]This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

[2]Bartosh was raised Catholic, was later a member of Baptist and Church of Christ congregations, and is currently a nondenominational Christian. While her adherence to a particular denomination has varied, Bartosh's insistence that her employer discriminated against her on the basis of her religion has been unwavering.

[3]Bartosh asserts that a pattern of religious harassment started soon after she began her work as a slide librarian in the University's art department in 1998.

[4]After complaining in August 2001 to the dean about religious harassment, Bartosh was terminated February 8, 2002.

-2-

also convinced the trial court to grant it a summary judgment denying Bartosh's retaliatory-termination claim. Bartosh appeals those decisions.

We reverse the dismissal of the claim for disparate-treatment termination and remand it to the trial court for further proceedings. We affirm the judgment of the trial court in all other respects. Those dispositions of the claims before us result from our holdings that (1) Bartosh's disparate-treatment-termination claim was preserved by a timely administrative complaint, (2) Bartosh's hostile-work-environment claim was not preserved by a timely administrative complaint citing any event supporting that claim, and (3) Bartosh's retaliatory-termination claim was not supported by any evidence of causation.

*(1)    Bartosh's Disparate-Treatment-Termination Claim Was Preserved by a Timely Administrative Complaint*

An employer commits unlawful employment discrimination (disparate treatment) if the employer discharges an individual because of religion. TEX. LAB. CODE ANN. § 21.051 (Vernon 2006).

A plaintiff must comply with administrative prerequisites to sustain an employment discrimination cause of action. This is mandatory and jurisdictional.[5] *DeMoranville*, 933 S.W.2d

---

[5]Not all mandatory administrative time limitations are considered jurisdictional. *See, e.g., Igal v. Brightstar Info. Tech. Group*, 250 S.W.3d 78 (Tex. 2008) (mandatory filing limitation period under Section 61.051 of Texas Labor Code not jurisdictional). Nevertheless, it appears that the timely administrative complaint requirement under the provision of the Texas Labor Code at issue is a mandatory, and likely jurisdictional, prerequisite. *See, e.g., Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996) ("mandatory and jurisdictional"); *Ashcroft v. HEPC-Anatole, Inc.*, 244 S.W.3d 649, 651 (Tex. App.—Dallas 2008, no pet.) ("mandatory and jurisdictional that claims

490 (reviewing summary judgment for failure to file timely administrative complaint); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890 (Tex. App.—Texarkana 2001, no pet.). The plaintiff has the burden of alleging facts to affirmatively demonstrate the trial court has jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To attach jurisdiction, Bartosh must have filed a complaint with the Texas Commission on Human Rights[6] or the United States Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discriminatory employment practice. *See* TEX. LAB. CODE ANN. §§ 21.201, 21.202 (Vernon 2006). The 180-day limitations period commences the date the alleged unlawful employment practice occurred. *See* TEX. LAB. CODE ANN. § 21.202; *DeMoranville*, 933 S.W.2d at 492–93. A discrete retaliatory or disparate treatment discriminatory practice "occurs" the day it happens. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).[7]

---

under the Texas Labor Code be filed no later than the 180th day after the date the alleged unlawful employment practice occurred"); *Del Mar Coll. Dist. v. Vela*, 218 S.W.3d 856, 860 (Tex. App.—Corpus Christi 2007, no pet.); *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *cf. Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (exhaustion of administrative remedies is mandatory prerequisite).

[6]This was the name at the time of Bartosh's complaint. The commission is now the Texas Workforce Commission-Civil Rights Division. *See* TEX. LAB. CODE ANN. § 21.0015 (Vernon 2006).

[7]The Texas Labor Code discrimination provisions are modeled on Title VII, *see* 42 U.S.C.A. § 2000e, *et seq.* (West, Westlaw current through 2008), and Texas courts follow the federal statutes and cases in applying the Texas statute. *See* TEX. LAB. CODE ANN. § 21.001 (Vernon 2006); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475–76 (Tex. 2001).

In examining a claim of a time bar, we construe employment discrimination charges with the "utmost liberality," bearing in mind that such charges are generally prepared by laypersons untutored in the rules of pleading, though requiring that the charge contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges. *Preston v. Tex. Dep't of Family & Prot. Servs.*, 222 Fed. Appx. 353, 356 (5th Cir. 2007); *cf. EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988) (Title VII procedures are remedial, initiated by laypersons, rather than lawyers). As such,

> [D]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted.

*Fed. Express Corp. v. Holowecki*, 552 U.S. ___, 128 S.Ct. 1147, 1160 (U.S. Feb. 27, 2008) (finding "charge" had been timely made).

"The crucial element of a charge of discrimination is the factual statement contained" in the administrative complaint. *Preston*, 222 Fed. Appx. at 356. The court should construe the administrative complaint somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the administrative investigation which "can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *cf.* 29 C.F.R. § 1601.12(b) (West, Westlaw current through June 12, 2008) ("a charge is sufficient when . . . sufficiently precise to identify the parties, and to describe generally the action or practices

-5-

complained of").  The court should engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.  *Pacheco*, 448 F.3d at 789.

Nonetheless, the administrative complaint is not construed so broadly as to exceed the scope of the administrative investigation reasonably expected to grow out of the complaint.  *Id.*  A claim must be dismissed if the administrative complaint, on its face or after amplification by further facts, discloses a failure to state a timely claim.  *Cf.* 29 C.F.R. § 1601.18(a) (West, Westlaw current through June 12, 2008).

Bartosh filed an administrative complaint with the Texas Commission on Human Rights February 14, 2002.[8]  Thus, the court could consider discriminatory practices occurring within 180 days of February 14, 2002, i.e., on or after August 18, 2001.

In her administrative complaint, on "EEOC form 5," Bartosh checked the boxes asserting discrimination on the bases of religion[9] and retaliation.  The complaint does not assert that harassment was ongoing; the "continuing action" box was not checked and the dates of

[8]The complaint in the record is dated June 25, 2002, though it contains a notation:  "Original received February 14, 2002."  Bartosh's second amended petition explains this was due to an omitted signature.  A complaint may be amended to cure technical defects or omissions. TEX. LAB. CODE ANN. § 21.201(e).  A verified complaint relates back to and satisfies any deficiencies in an earlier one filed within the applicable time limit. *See Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 373 (Tex. 1993).

[9]The form does not provide separate boxes to differentiate between different types of religious discrimination claims, e.g., religious accommodation, disparate treatment, disparate impact, or hostile work environment.

discrimination are noted as "02/08/2002 to 02/08/2002." Bartosh listed three "particulars" in support of her charges: (1) that she was terminated February 8, 2002; (2) that no reason was given for her termination; and (3) that she believes she was discriminated against because she is a Christian and in retaliation for opposing discrimination. *Id.*

Bartosh's administrative complaint mentions her discharge, which occurred within the 180-day window. Bartosh further asserted in her complaint that she was terminated and was discriminated against "for her Christian, with Catholic background, religion *and* in retaliation." (Emphasis added.)

To establish a prima facie case of disparate-treatment discrimination, Bartosh must provide evidence that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she was subject to an adverse employment action, and (4) others similarly situated were treated more favorably. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). Discrete acts constituting the adverse employment action under the third element include termination, failure to promote, denial of transfer, or refusal to hire. *See Morgan*, 536 U.S. at 114. Although neither Bartosh's administrative complaint nor Bartosh's various petitions specify the basis of her claim, Bartosh asserted in response to the University's motions, and in briefing to this Court, that the disparate-treatment claim is based on the discrete act of termination.[10]

---

[10]In a letter brief following oral argument, Bartosh seems to assert that her disparate-treatment claim is also premised in the various harassing incidents named in her administrative complaint. To the extent Bartosh's disparate-treatment claim is grounded in the untimely allegations of harassment, we reject this basis. Each "discrete discriminatory act starts a new clock for filing

In reviewing a jurisdictional dismissal for nontimely filing, we consider the allegations of the complaint as true. *Fellows v. Univ. Rests., Inc.*, 701 F.2d 447, 449 (5th Cir. 1983).

Construing Bartosh's administrative complaint broadly, and to protect Bartosh's statutory remedies, we find that the scope of the administrative investigation growing out of Bartosh's complaint of termination and discrimination must fairly include an investigation of both an allegedly retaliatory termination and an allegedly discriminatory termination.

The University raises various complaints that Bartosh failed to show the termination was based on religion[11] and failed to present evidence of less favorable treatment, but these arguments go to the merits of the claim and are more properly disposed of on summary judgment than on the plea to the jurisdiction. *Cf. Preston*, 222 Fed. Appx. at 356. To the extent the court disposed of

---

charges alleging that act," *Morgan*, 536 U.S. at 113, and any disparate-treatment claim based on those discrete acts in this case is time-barred. To the extent Bartosh's disparate-treatment claim is grounded in her hostile-work-environment claim, we address that as the hostile-work-environment claim. Parenthetically, we note we have previously rejected finding a pattern of harassing incidents to be part of the prima facie proof of a disparate-treatment claim. *See Baker v. Gregg County*, 33 S.W.3d 72, 81 n.7 (Tex. App.—Texarkana 2000, pet. dism'd).

[11]Indeed, Bartosh does seem to muddle termination in retaliation for a complaint of religious harassment and a disparate treatment termination on the basis of religion. On the one hand, Bartosh claims disparate-treatment termination and, on the other hand, Bartosh asserts to this Court that "'But for' Bartosh's decision to report discrimination against her, Bartosh would likely never have been terminated." To the extent Bartosh's disparate-treatment claim is grounded in her retaliation claim, we reject this basis. *Cf. Burlington N. & Santa Fe R.R. v. White*, 548 U.S. 53 (2006) (anti-retaliation provisions are not tied to the nature of discrimination and underlying conduct forming the basis of the original protected complaint, but on the challenged retaliatory act in response to that complaint).

Bartosh's disparate-treatment claim on the plea to the jurisdiction because it found no merit in the claim, the trial court erred.

Although a summary judgment record was developed on the disparate-treatment claim, the trial court did not grant the University's alternative motion for summary judgment on the disparate-treatment claim; the court granted only the University's plea to the jurisdiction on the disparate-treatment claim. This is not a case in which the trial court expressly considered and conditionally ruled on the merits. *See, e.g., Juliff Gardens, L.L.C. v. Tex. Comm'n on Envtl. Quality*, 131 S.W.3d 271, 280 (Tex. App.—Austin 2004, no pet.); *Cozby v. City of Waco*, 110 S.W.3d 32, 34 (Tex. App.—Waco 2002, no pet.).[12] As the trial court, in granting the plea to the jurisdiction and finding no subject-matter jurisdiction over the disparate-treatment claim, necessarily never reached the merits, we reverse the trial court's judgment as to the disparate-treatment claim for alleged discrimination in the discrete act of termination, and remand that claim for consideration of the merits. *See Cozby*, 110 S.W.3d at 35–36; *Hefner v. Grievance Comm. for Dist. 1-A*, 708 S.W.2d 43, 44–45 (Tex. App.—Dallas 1986, no writ).

---

[12]A trial court without subject-matter jurisdiction cannot reach the merits of a case. *See Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex. 2006); *Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 440 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (purpose of plea to the jurisdiction is to defeat cause of action "without regard to whether the claims asserted have merit").

*(2)     Bartosh's Hostile-Work-Environment Claim Was Not Preserved by a Timely Administrative Complaint Citing Any Event Supporting that Claim*

A hostile-work-environment claim entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment. *See Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67 (1986). Because a hostile-work-environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts of the hostile work environment fall outside the statutory time period. *Morgan*, 536 U.S. at 117. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*.

Bartosh's administrative complaint includes only two allegedly harassing incidents or acts that were arguably religious-based occurring within the 180-day window, that is, on or after August 18, 2001: the August 24, 2001, reporting of an earlier incident and the February 8, 2002, termination.[13] The problem with those two allegations is that neither of those events can be considered harassment.

---

[13]As discussed above, the termination serves as the basis of Bartosh's disparate-treatment claim. The termination and the reporting both serve as the basis of the retaliation complaint. The University did not assert that the retaliation complaint was time-barred.

-10-

Termination does not qualify as a predicate act supporting the hostile-work-environment claim; termination is not itself harassing conduct.[14] *See Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000); *cf. Huckabay v. Moore*, 142 F.3d 233, 239–40 (5th Cir. 1998) ("demotion is a different sort of discrimination from the day-to-day harassment that makes his workplace a hostile environment"); *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 980–81 (5th Cir. 1983) (discrete act of discharge not included in continuing violation; alleged acts must involve the same type of discrimination); *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 86–87 (Tex. App.—Fort Worth 2003, pet. denied) (discrete acts independently put a plaintiff on notice of a claim and do not require cumulation). Similarly, Bartosh's act of reporting an earlier incident is not itself a harassing act by the University or its employees.

But does Bartosh's complaint allege other events that could be considered under the hostile-work-environment claim? Bartosh's administrative complaint did reference other specific incidents: (a) on or about March or April 2001, Bartosh was subjected to harassment by being called to view

---

[14]This is not to say that the fact of termination has no relevance. The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic, e.g., religion; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). A plaintiff complaining of harassment by a supervisor need show only the first four elements. *Id.* While termination may serve as evidence of the fourth element, it is not proof of "unwelcome harassment" under the second element, as Bartosh seems to assert.

a computer image of "Jesus in a satan costume"; (b) on August 16, 2001,[15] three comments were made, "Catholics are paying for forgiveness, God can't recycle like man, [and] Christianity is a 'cop out'"; and (c) on or about August 24, 2001, Bartosh reported harassment. Bartosh concludes her third "particular" with the statement that, as a result of reporting, she was terminated. The specific incidents of alleged harassment included in the charge are all untimely; the Jesus computer image incident is untimely by several months, and the three-comments incident is untimely by two days. Of these three events, the only one occurring on or after August 18, the report of harassment, was not itself an event of harassment.

But, there were also some other allegations made later. Although Bartosh repeated the time-barred harassing incidents and alleged no timely harassing incidents in her original, first amended, or second amended petitions, Bartosh alleged non-time-barred harassing incidents in response to the University's plea to the jurisdiction. In an affidavit filed February 25, 2005, three years after the administrative complaint and two years after filing suit, Bartosh alleged these additional (timely and allegedly harassing) events:[16] on August 21, 2001, Amorous told Bartosh to turn off her Christian

---

[15]Although Bartosh's complaint did not specify the precise day of this event, the details were later amplified by Bartosh's affidavit, from which one can determine that this incident occurred August 16, 2001.

[16]Bartosh's affidavit also presents several additional *untimely* incidents of alleged religious harassment: (1) within a few months of beginning her employment, Bartosh volunteered to Amorous and Tony Shipp that she is a Christian and they reacted "as if they disapprove," made negative comments about religion in a "mocking tone," and then "became icy and hostile"; (2) Amorous and Shipp started conversations in Bartosh's presence that "were demeaning of my Christian faith" once a month for the next few years, then weekly; (3) Amorous regularly (once a month, and then semi-

radio when others are in the slide library; in September 2001, when Bartosh's television/radio still worked despite a blackout, Amorous asked Bartosh if she had been listening to Christian programming, because if she had, it was a miracle; in January 2002, in response to Bartosh's inquiry if Amorous, while living in New Mexico, had "attended services" at the church in a Georgia O'Keefe image, Amorous stated he had attended a church service in a similar church, where there was rhythmic chanting and bells to hypnotize the parishioners into submission.

The University asserts that Bartosh's hostile-work-environment claim is time-barred because all examples of harassment included in the complaint are untimely. Bartosh counters that her hostile-work-environment claim can survive the fact that the specific incidents alleged in the complaint are all untimely because the time-barred incidents are sufficiently related to non-time-barred harassing incidents that could reasonably be expected to grow out of an administrative

---

weekly) sent email jokes demeaning to and ridiculing Christians (and also posted hard copies near employee mailboxes); (4) in "spring" 2001, after Bartosh got a campus parking ticket for no permit sticker, Amorous commented, "I can't believe that a good Christian like you would go without a parking sticker"; (5) in "summer" 2001, when Shipp "interrogated" Bartosh in a hostile and mocking tone about her belief in God, Bartosh stated that there are other gods, but hers is the "true god," to which Shipp "sarcastically responded I was different than other Christians" because others deny other gods; (6) in "summer" 2001, after Shipp told Bartosh her dying plant would be healthy if she talked to it, and Bartosh said to the plant "Die, plant, Die," Shipp "admonished" Bartosh for being mean and reminded her she calls herself a Christian; and (7) on August 16, 2001, Shipp was "antagonistic to Christianity" when he said he was pagan and had been baptized with buffalo blood.

Bartosh's affidavit also includes some allegations of *timely* incidents which do not, to us, appear to involve religion at all: (1) on September 11, 2001, when Bartosh tried to interrupt Amorous' class to tell him about the terrorist attacks, Amorous was dismissive of her; and (2) after September 11, when Bartosh wore a George Bush lapel pin "to show support for the president" Amorous and Shipp expressed their opinion that Bush "is an idiot."

investigation of what are expressly noted to be examples. Bartosh further asserts that the ongoing, or "continuing violation,"[17] nature of the claim allows jurisdiction over all harassment suffered so long as any harassment occurred within 180 days of the administrative complaint.

Bartosh is correct that a timely-filed complaint of at least one harassing incident may support an investigation into, and suit on, the continuing violation of harassment of which that incident is part, including time-barred incidents. *See Morgan*, 536 U.S. at 106; *Huckabay*, 142 F.3d at 240; *Fellows*, 701 F.2d at 449. But, our research reveals that, in every case applying *Morgan* or the "continuing violation" doctrine, to the extent the contents of the administrative complaint are discussed, at least one non-time-barred act of harassment is actually complained of in the administrative complaint. *See, e.g., Morgan*, 536 U.S. at 106 (some of complained-of incidents were timely); *EEOC v. WC & M Enters., Inc.*, 496 F.3d 393, 398–99 (5th Cir. 2007) (most incidents in complaint untimely, though one inclusion of one timely incident of harassment in administrative complaint renders entire hostile-work-environment claim timely); *Huckabay*, 142 F.3d at 240 (affidavit attached to EEOC complaint included timely allegation); *Fellows*, 701 F.2d at 449 (apparently timely complaint concerning individual action of discrimination could support a class action); *Del Mar Coll. Dist.*, 218 S.W.3d 856 (timely administrative complaint allegation contradicted by later-filed deposition and affidavits); *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875, 878 (Tex. App.—Corpus Christi 2004, no pet.) (complaint alleged "ongoing" lack of

---

[17]*See Celestine*, 266 F.3d at 351–52; *Berry*, 715 F.2d at 981; *see also Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001).

disability accommodation into the relevant time frame); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (timely complaint supported additional claim based on retaliation because of, and subsequent to, initial administrative complaint).

In essence, *Morgan* and the continuing violation doctrine are about defining the scope of liability. *Celestine v. Petroleos de Venezuela SA*, 108 Fed. Appx. 180, 187 n.11 (5th Cir. 2004). That is, they usually apply to determine if acts predating the earliest date of the limitations period are within the scope of the claim established by the timely-claimed act. Here, Bartosh seeks to apply these cases for the converse proposition: to determine if unpled-but-timely acts are within the scope of a "claim" established by pled-but-untimely acts. To so hold would thwart the very purpose of requiring the filing of a timely administrative complaint.

In construing the breadth of an administrative complaint, the question is whether an administrative investigation of the type of discrimination claimed might reasonably be expected to grow out of the facts that are alleged in the administrative complaint. *Pacheco*, 448 F.3d at 791. But, in determining what may reasonably be expected to grow from the complaint, the court considers only what can be determined from the timely-alleged facts. *Id*. Bartosh complained of no timely-alleged facts in support of a hostile-work-environment claim. Because there was no allegation of any harassing act inside the limitations period, no administrative investigation of a hostile-work-environment action could reasonably be expected to grow out of the administrative complaint. *Cf. WC & M Enters., Inc.*, 496 F.3d at 398–99; *Pacheco*, 448 F.3d at 789.

The court was correct in finding that Bartosh's hostile-work-environment claim was administratively barred. Therefore, we affirm that part of the order granting the plea to the jurisdiction for the hostile-work-environment claim.

*(3)* *Bartosh's Retaliatory-Termination Claim Was Not Supported by Any Evidence of Causation*

An employer commits unlawful employment discrimination (retaliation) if the employer retaliates or discriminates against a person who has opposed, filed a charge of, or made a complaint of discrimination. TEX. LAB. CODE ANN. § 21.055 (Vernon 2006).

The University's motion for summary judgment stated it would "contain elements of both traditional and no-evidence summary judgment."[18]

Traditional summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.

---

[18]When a motion for summary judgment appears to be ambiguous, appellate courts will construe it as a traditional summary judgment. *Claxton v. (Upper) Lake Fork Water Control & Improvement Dist.*, 246 S.W.3d 381, 384 n. 4 (Tex. App.—Texarkana 2008, pet. denied); *Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 514 (Tex. App.—Corpus Christi 2002, no pet.); *see Michael v. Dyke*, 41 S.W.3d 746, 750–51 n.3 (Tex. App.—Corpus Christi 2001, no pet.). But, the requirement of specificity under Rule 166a(c) is satisfied if the grounds stated in the motion give fair notice to the nonmovant. *Garrett v. L.P. McCuistion Cmty. Hosp.*, 30 S.W.3d 653, 655 (Tex. App.—Texarkana 2000, no pet.). Rule 166a(i) of the Texas Rules of Civil Procedure explicitly requires a party seeking a no-evidence summary judgment to, in his or her motion, "state the elements as to which there is no evidence." *See* TEX. R. CIV. P. 166a(i).

1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993).[19]  A no-evidence summary judgment is proper when the nonmovant has not produced any evidence of probative force to raise a fact issue on the material questions presented. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Woodruff v. Wright*, 51 S.W.3d 727 (Tex. App.—Texarkana 2001, pet. denied).[20] A plaintiff may prove a discrimination claim through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see also* TEX. LABOR CODE ANN. § 21.001; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  Absent direct evidence of discrimination,

---

[19]The general rule is that the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).  Once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).  In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum*, 941 S.W.2d at 911.  All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996).

[20]We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).  A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch v. Chapman*, 118 S.W.3d 742 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

the *McDonnell Douglas* line of cases establishes that, to overcome a motion for summary judgment on his or her discrimination claim, the claimant must first establish a prima facie case of discrimination, which entitles him or her to a presumption of discrimination. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

If the claimant survives the summary judgment attack on the prima facie case for the retaliation claim, the burden-shifting framework places the burden on the employer, on its summary judgment motion, to prove as a matter of law a legitimate, nondiscriminatory reason for termination. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). If the employer establishes as a matter of law a legitimate, nondiscriminatory reason for termination, the plaintiff has the burden to show that a fact issue existed that the reason for termination was a pretext for discrimination or retaliation. *See id.*; *O'Neal v. Roadway Express*, 181 Fed. Appx. 417, 420–21 (5th Cir. 2006) (pretext on retaliation claim). Under Texas summary judgment law, the nonmoving discrimination plaintiff may respond to this burden-shifting aspect of the summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the employer's summary judgment evidence as failing to prove, as a matter of law, that the given reason for termination was a legitimate, nondiscriminatory reason for termination. *Willrich*, 28 S.W.3d at 24.

Section 21.125 of the Texas Labor Code further delineates the plaintiff's burden on showing pretext by providing "a more specific standard of causation." *Toennies*, 47 S.W.3d at 475, 480; *see* TEX. LABOR CODE ANN. § 21.125 (Vernon 2006). Section 21.125 provides that "an unlawful

-18-

employment practice is established when the complainant demonstrates that . . . religion . . . was a motivating factor for an employment practice, even if other factors also motivated the practice." A plaintiff's subjective beliefs of discriminatory motivation are insufficient to overcome summary judgment evidence supporting a legitimate, nondiscriminatory reason for termination. *Willrich*, 28 S.W.3d at 25.

A claimant must prove these elements of a prima facie case of unlawful retaliation: (1) protected activity by the claimant, (2) an adverse action suffered by the claimant, and (3) a causal link between the protected activity and adverse action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *Graves v. Komet*, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.).

Bartosh alleges that, on August 24, 2001, she reported to the dean the religious harassment by Shipp and Amorous. Amorous terminated Bartosh February 8, 2002. The University's no-evidence summary judgment attacks the third element of the prime facie case: a causal connection between the report and the termination.

The University first asserts that Bartosh offers no evidence that Amorous, at the time he terminated Bartosh, knew of Bartosh's report to the dean. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004) (to demonstrate causation in retaliation claim on summary judgment, plaintiff must at least raise question about whether person who decided on adverse employment action was aware of protected activity). The University presents the deposition testimony of Amorous that he did not know of Bartosh's complaint to the dean until after Bartosh

was terminated. But, on the no-evidence motion, we note that Bartosh presented some circumstantial evidence raising an inference that Amorous knew, at the time he fired Bartosh, of Bartosh's complaint to the dean; Bartosh's summary judgment affidavit asserts that, immediately after Bartosh complained to the dean, Amorous' public harassment, which until that time had been regular, suddenly ceased, and he continued his harassment only in private. Bartosh contends that a jury could draw the inference from this evidence that Amorous changed his public behavior because of Bartosh's complaint to the dean. Considering the evidence in the light most favorable to Bartosh, and disregarding all contrary evidence and inferences, we find that Bartosh has presented more than a scintilla of probative evidence to raise a genuine fact issue as to whether Amorous knew of her complaint to the dean.

While Amorous' knowledge of the report may be necessary to support an inference of causation, it is not sufficient. The University also asserts there is no evidence that the termination was causally connected to the earlier complaint to the dean other than through the relative temporal proximity between those events. The University claims that there is no direct evidence of causation and that temporal proximity alone—especially given the protracted (five-and-a-half-month) delay between Bartosh's protected activity and her termination—does not allow for an inference of causation between the events. *See, e.g., Strong v. Univ. Healthcare Sys.*, 482 F.3d 802 (5th Cir. 2007); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42–44 (5th Cir. 1992). Bartosh, in response, references her affidavit's assertion that Amorous' behavior changed after her report as evidence in

addition to temporal proximity. Bartosh also references evidence of continuing harassment and animus against Bartosh's religion between the report and the termination as evidence supporting that the University's reasons for termination were a pretext for discriminatory termination.[21]

Bartosh's argument essentially is that the termination must have been[22] a retaliatory one because she made a complaint and was terminated after continuing harassment on the basis of her religion. But, Bartosh's subjective belief as to the motivation for termination does not suffice. *Willrich*, 28 S.W.3d at 25. Moreover, to the extent Bartosh's evidence of retaliation is grounded in the underlying discrimination, it does not suffice. Bartosh "must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).

The anti-retaliation provision seeks to secure the primary objective of a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status by preventing an employer from interfering (through retaliation) with an employee's efforts

---

[21]Bartosh presents extensive argument that there was no legitimate, nondiscriminatory reason for her termination. The evidence shows Bartosh was terminated after about three years' employment, with generally favorable performance evaluations over those years. We do note that Bartosh's spring 2001 performance review reflected a lowered appraisal from spring 2000. The University presented no evidence of negative written evaluations, though the University did present deposition testimony concerning multiple faculty complaints about Bartosh's work. Bartosh's affidavit disputes some, but not all, of these accusations.

[22]Bartosh's affidavit included her subjective belief as to Amorous' knowledge; sometime between September 2001 and January 2002, Amorous commented favorably on religious art images in an art book and Bartosh was left with the distinct impression Amorous was trying to get out of hot water with the dean.

to secure or advance enforcement of that primary objective. *White*, 548 U.S. 53. Bartosh's retaliation claim is distinct from her disparate-treatment claim; the disparate-treatment claim is premised on statutory provisions that seek to prevent injury to individuals based on who they are, e.g., their religious status, while the retaliation claim is premised in an anti-retaliation provision that seeks to prevent harm to individuals based on what they do, i.e., their conduct. *See id.*

On the facts of this case, it does not suffice, on the causation element of the retaliation claim, to show that Bartosh continued to be harassed on the basis of her religion. There is no evidence that the termination was the culmination of an escalating pattern of harassment, or that it became worse after the report. Indeed, Bartosh's affidavit indicates that it did not. Nor does the record include any evidence that Bartosh was harassed about her report. Indeed, there is no evidence that the report was ever mentioned to Bartosh by the dean or Amorous after it had been made. Bartosh's evidence of harassment does not constitute proof that the University retaliated against her protected conduct. *See Sibley v. Kaiser Found. Health Plan of Tex.*, 998 S.W.2d 399, 402–03 (Tex. App.—Texarkana 1999, no pet.).

Thus, we are left with only the fact that termination occurred after her earlier report in support of the retaliation claim.[23] We are left to find causation in the five and a half month proximity, attenuated as it is, between report and termination. We are persuaded by numerous

_____

[23]Bartosh would have us find that, in addition to proximity, an inference of retaliation is found in the University's failure to follow its progressive disciplinary policy. In fact, the policy in the record explicitly states that progression is "recommended but not required."

federal decisions finding temporal proximity alone to be insufficient evidence of causation. *See, e.g., Strong*, 482 F.3d at 807–08; *Roberson*, 373 F.3d at 656. *But see Shirley*, 970 F.2d at 42–44 (retaliation claim supported by proximity of complaint in conjunction with voluminous other evidence including harassment and disparaging remarks specifically about the earlier complaint).

Because we agree that Bartosh presented no evidence of causation, her prima facie case fails. We need not reach the University's traditional motion for summary judgment and the accompanying burden-shifting analysis.

We affirm the dismissal of Bartosh's hostile-work-environment claim and the summary judgment on her retaliation claim. We reverse the grant of the plea to the jurisdiction as to the disparate-treatment claim and remand that claim to the trial court for consideration on the merits.

                    Josh R. Morriss, III
                    Chief Justice

Date Submitted:     March 11, 2008
Date Decided:       June 30, 2008