

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00033-CV

_____

CASSANDRA BERING, Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE—PFCMOD, Appellee

---

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-315910-20

---

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Cassandra Bering filed an administrative complaint against her former employer—Appellee the Texas Department of Criminal Justice—PFCMOD (the Department)—for alleged retaliation. Then, relying on that administrative complaint, Bering sued the Department under the Texas Commission on Human Rights Act (TCHRA) for alleged race, gender, and disability discrimination. *See* Tex. Lab. Code Ann. § 21.051. The Department pointed out the discrepancy between Bering's complaint and TCHRA claims, and it filed a combination plea to the jurisdiction and motion for summary judgment (the Plea) seeking dismissal of Bering's claims due to her failure to exhaust her administrative remedies. The trial court granted the Plea.

Bering challenges that ruling on appeal, arguing that her administrative complaint, when liberally construed, encompassed her TCHRA claims. We disagree; Bering cannot shoehorn her TCHRA claims for race, gender, and disability discrimination into her retaliation-focused administrative complaint. Accordingly, we will affirm.

## I. Background

Following Bering's resignation from the Department, she used a standardized form—entitled "charge of discrimination"[1]—to file an administrative complaint with

---

[1]Much of the administrative complaint is printed in all capital letters; we have altered the capitalization of quoted portions to improve readability.

the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission's Civil Rights Division.[2]

## A.     Administrative Complaint

On the first page of the complaint form, Bering was given checkbox options to identify what the complained-of "discrimination [was] based on."  Some of the options included "race," "color," "sex," "disability," and "retaliation," but Bering did not check any of those boxes.  Instead, she checked the box for "other" without filling in the corresponding blank to identify what the "other" basis was.[3]

Then, in the main body of her administrative complaint—her narrative factual statement of "the particulars" and resulting "personal harm"—Bering explained that she had been the target of retaliation:

> On or around September 27, 2019, I was forced to resign after being subjected to disparate treatment based on retaliation after I reported two co-workers for hostile work environment and aggression and after multiple reports verbally and in writin[g], leadership failed to act, beginning [o]n 12/17.  I reported a co-worker Thomas Hopper for retaliating against me in the workplace because he was reprimanded after I reported him for disregarding a direct order from our supervisor.  He intimidated me with [sic] showing me his firearm when traveling

---

[2]Nothing in the record indicates that this complaint was amended, and nothing indicates that Bering filed any other relevant administrative complaints.

[3]Although each checkbox was listed to the left of its description, the checkbox that Bering selected was located directly below the word "retaliation."  This proximity—taken together with (1) Bering's statement elsewhere in the form that she "believe[d] that [she] was retaliated against" and (2) her failure to identify the "other" basis for discrimination in the blank corresponding to that checkbox—suggests that Bering may have intended to select the "retaliation" checkbox.

together and making threatening remarks. I was harassed by Timothy Connelly, a supervisor, who would repeatedly put papers under my door, almost causing me to fall as I entered my office[,] and upon asking him to cease, [he] verbally abused me while banging his fist on a metal tray and aggressively came towards me, causing me to fear for my safety.

Due to these acts, my health was affected. I was approved FMLA on 8/8/19[]. On 8/12/19, the division director, Cody Ginsel, informed me that I was relieved from duty and would have to sign and have doctor clear me before returning to work and if not, I would be subject to disciplinary action. As a result of not being told what safety measures would guarantee my safety and why I was relieved from duty, with no response, I resigned under constructive discharge. [Paragraph formatting altered.]

At the end of her narrative, Bering summarized her allegations in a "discrimination statement," asserting that she "believe[d] that [she] was retaliated against."

## B. Lawsuit and Judgment

A few months later, relying on her administrative complaint, Bering filed a TCHRA lawsuit against the Department, alleging race, gender, and disability discrimination. *See id.* As the lawsuit progressed, Bering clarified that she believed that Hopper and Connelly had harassed her because she was a black female, that such harassment created a hostile work environment, that it had led to her diagnosis with post-traumatic stress disorder (PTSD), that the Department had failed to accommodate her PTSD by guaranteeing her safety, and that the situation had amounted to constructive discharge.

As previously noted, the Department highlighted the mismatch between Bering's administrative complaint and her TCHRA claims, and it filed its Plea based

4

on (among other things) her failure to exhaust her administrative remedies for her TCHRA claims. Bering protested, insisting that her administrative complaint had been "sufficiently broad" to encompass her TCHRA claims because "[a]ny reasonable investigation of [her written] allegations would [have] uncover[ed] the racial, gender[,] and disability bases for her claims." The trial court granted the Department's Plea without specifying a basis for its judgment.

## II. Discussion

In Bering's dispositive appellate issue, she contends that her TCHRA claims fit within the scope of her administrative complaint such that her complaint satisfied the exhaustion-of-administrative-remedies requirement, so the trial court could not have granted the Department's Plea on that basis.

## A. Standard of Review and Governing Law

"[E]xhaustion of administrative remedies is a mandatory prerequisite to filing a civil action alleging violations of the [T]CHRA," *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004), and because a governmental entity (such as the Department) is immune from suit absent a waiver of immunity, "all statutory prerequisites to suit are jurisdictional in suits against governmental entities," *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 510–15 (Tex. 2012); *see* Tex. Gov't Code Ann. § 311.034; *City of Madisonville v. Sims*, 620 S.W.3d 375, 377–80 (Tex. 2020); *Cnty. of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *3–4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.). We review such

5

jurisdictional issues (and the trial court's ruling on them) de novo. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008); *Manion*, 2012 WL 1839399, at *3.

A TCHRA plaintiff's exhaustion of her administrative remedies "begins by [her] filing [of an administrative] complaint." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804–05 (Tex. 2010); *see* Tex. Lab. Code Ann. § 21.201. But filing an administrative complaint does not then give the plaintiff carte blanche to pursue other TCHRA claims that she might later devise; her resulting TCHRA lawsuit is confined to claims specifically identified in the administrative complaint and to those factually related claims that could "reasonably be expected to grow out of the agency's investigation of the claims" in the administrative complaint. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Carroll*, No. 01-23-00014-CV, 2024 WL 3417051, at *7 (Tex. App.—Houston [1st Dist.] July 16, 2024, pet. filed) (mem. op.) (quoting *Cuadra v. Declaration Title Co.*, 682 S.W.3d 628, 634 (Tex. App.—Houston [1st Dist.] 2023, no pet.)); *see Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).[4]

When determining an administrative complaint's scope, the "crucial element . . . is the factual statement contained in the administrative complaint." *Manion*, 2012 WL 1839399, at *4 (internal quotation marks omitted) (quoting *Bartosh v.*

---

[4]Because "[t]he [T]CHRA is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964, . . . federal case law may be cited as authority in cases relating to the Texas [statute]." *Hoffmann-La Roche*, 144 S.W.3d at 445–46 (internal quotation marks omitted).

*Sam Hous. State Univ.*, 259 S.W.3d 317, 322 (Tex. App.—Texarkana 2008, pet. denied)); *see* Tex. Lab. Code Ann. § 21.201(c)(2) (requiring administrative complaint to state "the facts on which the complaint is based"); *Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 401 (Tex. App.—El Paso 2018, no pet.) (analyzing scope of administrative complaint to determine exhaustion of TCHRA administrative remedies and noting that "the boxes the employee checks [on the complaint] are not dispositive as to the nature of the claim"); *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 702 (Tex. App.—Austin 2012, pet. denied) (similar, citing *Sanchez v. Standard Brands*, Inc., 431 F.2d 455, 462 (5th Cir. 1970)). We construe an administrative complaint liberally, looking "slightly beyond its four corners, to its substance rather than its label." *Carroll*, 2024 WL 3417051, at *7 (quoting *Pacheco*, 448 F.3d at 789). But we cannot rewrite the complaint to include omitted facts; the written allegations must provide "an adequate factual basis . . . [to] put[] the employer on notice of the existence and nature of the charges." *Manion*, 2012 WL 1839399, at *4 (quoting *Bartosh*, 259 S.W.3d at 321); *see Cuadra*, 682 S.W.3d at 635.

## B.  Scope of Bering's Administrative Complaint

The main factual statement in Bering's administrative complaint—the "crucial" indicator of its scope, *Manion*, 2012 WL 1839399, at *4—made no mention of race, gender, or disability, nor did it give any indication that her coworkers' actions were connected to her membership in a protected class. To the contrary, Bering's

7

description of "the particulars" identified an entirely different motivation for her coworkers' actions: workplace friction.

Bering's administrative complaint alleged that Hopper had harassed her "because he was reprimanded after [Bering] reported him for disregarding a direct order from [their] supervisor"—a motivation that had nothing to do with her membership in any protected class. *See* Tex. Lab. Code Ann. § 21.051 (defining discrimination claim and stating that employer's actions must be "because of race, color, disability, . . . sex," or another protected classification); *Manion*, 2012 WL 1839399, at *6 (emphasizing that "[t]he TCHRA allows suit against a governmental unit only when it discriminates *because of* a protected status"). And her complaint further alleged that Connelly had "verbally abused" her and had acted aggressively when she had asked him to stop putting papers under her door—again, a cause with no apparent connection to her membership in any protected class. *See* Tex. Lab. Code Ann. § 21.051. In fact, Bering's complaint did not even identify her race, much less that of Hopper, Connelly, or the individuals in "leadership" whom Bering alleged had "failed to act." And while most of the relevant individuals' genders could be inferred from their names and pronouns, Bering did not call attention to anyone's gender or imply that gender was significant in any way.

Nor, for that matter, did Bering's complaint mention her disability, i.e., her PTSD. Although she stated that her "health was affected" by the alleged hostility at work and that she "was approved [for] FMLA," she gave no indication that the health

8

effects constituted a disability and that such disability motivated a separate unlawful employment action against her. *See id.* Instead, Bering's factual statement of "the particulars" of her complaint were limited to allegations of "retaliation" for workplace disagreements—disagreements that, based on her description, had nothing to do with her race, gender, or disability. *See id.* § 21.055.

Bering reaffirmed this elsewhere in her administrative complaint. *See Sanchez,* 431 F.2d at 462 (commenting that the factual statement is the "crucial element of a charge of discrimination" and that "[e]verything else entered on the form is, in essence, a mere amplification of the factual allegations"). For example, she declined to check the boxes for "race," "color," "sex," or "disability" when asked to identify the type of discrimination being alleged, and in her "discrimination statement," she summarized the bottom line of her complaint as her "belie[f] that [she] was retaliated against."

Our sister court addressed a similar situation in *Manion.* 2012 WL 1839399, at *5–7. There, the employee—Manion—filed an administrative complaint that detailed her supervisor's "illegal and abusive actions" and that alleged that Manion had been retaliated against and transferred to the night shift after she had complained of her supervisor's treatment. *Id.* at *5. Manion's "[d]iscrimination [s]tatement" summarized her complaint in a manner similar to Bering's "discrimination statement": by asserting that she had been mistreated "because [of] retaliation." *Id.* And elsewhere on the administrative form, Manion marked the checkbox to indicate that her complaint was

9

based on "[r]etaliation." *Id.* Yet, when Manion filed suit against her employer, she raised a TCHRA claim of gender discrimination, and she argued—as Bering does here—that her discrimination claim was encompassed within the scope of her retaliation-focused administrative complaint. *Id.* at *4–6.

The Austin Court of Appeals disagreed. *Id.* at *6–7. It noted that Manion's administrative complaint did not "contain[] any reference to discriminatory treatment based on gender"; she "did not use the words 'gender,' 'sex,' [or] 'female,'" and she gave no indication that the hostility that she had experienced was "based on gender or any other protected class" so as to put her employer on notice that she intended to complain of gender discrimination. *Id.* at *6. The court held that absent any reference to or notice of gender discrimination, Manion's administrative complaint could not reasonably have been expected to lead to an investigation that encompassed gender discrimination. *Id.* at *6–7.

The same is true here. Even broadly construed, Bering's administrative complaint did not so much as hint that her alleged mistreatment was based on her race, gender, or disability.[5] *See id.* at *5–7. She did not mention race, gender, or

_____

[5]In response to the Department's Plea, Bering filed an affidavit that, among other things, averred that she had "spoke[n] with the individual at the Commission" and had "explained that [her] sex, race, and disability were all involved in the reasons for the employer's actions against [her]"; that the individual had "promised that all of this would be investigated"; and that he had "prepared the [written] complaint" for Bering. Bering alludes to this portion of her affidavit in one sentence of her exhaustion-of-administrative-remedies argument; she states that "to the extent that the EEOC failed to properly insert information in the [administrative complaint], the

10

disability discrimination in her factual description of "the particulars"; she did not mark the checkboxes for any of those types of discrimination; and she did not allude to those protected classifications in her "discrimination statement." Were we to construe Bering's complaint to encompass such unmentioned allegations, we would circumvent the TCHRA's administrative requirements "as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely [administrative complaint]." *Sw. Convenience Stores*, 560 S.W.3d at 401–02 (quoting *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997), and holding that

---

[c]ourts have long held that the failures of the EEOC should not be visited upon the claimants."

But Bering cites no legal authority to support her vague assertion of law, nor does she cite any legal authority for her implied contention that a court may expand the scope of an administrative complaint to include new allegations made in an undocumented verbal conversation with an unnamed individual at "the Commission." *Cf.* Tex. Lab. Code Ann. § 21.201(b) (requiring complaint to "be in writing and made under oath"); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (recognizing that an administrative complaint "need not always arise from the EEOC charge *form*" and that "[i]n some circumstances, other documents can serve as a[n administrative] charge"); *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664–65 (7th Cir. 2000) (acknowledging precedent that "looked beyond the four corners of the EEOC charge form" to determine scope but noting that in such cases, "the outside allegations were in writing," and holding that the plaintiff's alleged oral conversation with the intake officer did not expand the scope); *Perkins v. Starbucks Corp.*, No. 4:21-CV-4189, 2022 WL 17069145, at *5 (S.D. Tex. Nov. 17, 2022) (mem. op. & order) (holding that verbal conversations were insufficient to constitute an administrative complaint and stating that plaintiff could not "circumvent the requirement that a charge be in writing by pointing to oral statements that he allegedly made to an EEOC investigator"). Thus, to the extent that Bering intends to rely on her alleged verbal conversation with the EEOC to expand the scope of her written complaint, she has inadequately briefed the issue. *See* Tex. R. App. P. 38.1(i) (requiring brief to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities").

11

administrative complaint's broad allegation of gender discrimination did not exhaust administrative remedies for claim alleging hostile work environment based on sexual harassment); *see Pacheco*, 448 F.3d at 788–89 (discussing standards for determining scope of complaint and noting that the statutory scheme contemplates the administrative agency having a presuit "opportunity to attempt to obtain voluntary compliance" so "[a] *less* exacting rule [regarding interpretation of a complaint's scope] would . . . circumvent the statutory scheme").

Because Bering's TCHRA claims for race, gender and disability discrimination were not within the scope of her administrative complaint, she failed to exhaust her administrative remedies for those TCHRA claims, and the trial court lacked jurisdiction over them. We overrule Bering's first issue. And because that issue is dispositive, we need not address her other issues. *See* Tex. R. App. P. 47.1.

## III. Conclusion

The trial court lacked jurisdiction over Bering's TCHRA claims; thus, we affirm the judgment granting the Department's Plea. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: October 10, 2024

12