COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

SOUTHWEST CONVENIENCE        No. 08-15-00099-CV

STORES, LLC,       §

           Appeal from

      Appellant,       §

      County Court at Law No. 6

v.       §

      of El Paso County, Texas

NORMA MORA,       §

      (TC # 2013-DCV3446)

      Appellee.       §

## O P I N I O N

Southwest Convenience Stores (SCS) files this interlocutory appeal challenging the trial court's order denying its plea to the jurisdiction. The appeal raises the recurring issue of whether claims asserted in a worker's employment discrimination lawsuit were first raised in an administrative charge of discrimination. That question is important, because under our statutory framework, a trial court can only hear claims timely pursued in the administrative review process, or those factually related claims that can reasonably be expected to grow out of it.[1] In this case, we conclude that the employee's sexual harassment and retaliation claims were not raised in the administrative process, and we render judgment dismissing the case for want of subject matter jurisdiction.

---

[1] *See e.g. Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 476 (Tex.App.--El Paso 2013, pet. denied); *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) and discussion below.

**BACKGROUND**

SCS, which operates "7-11" convenience stores, hired Norma Mora in 2002 and promoted her to a managerial position in 2007. She was supervised by Daniel Silva. In October 2011, she requested to self-demote back to a store clerk position. The how and why of that request lies at the heart this case.

**The Administrative Discrimination Charge**

On December 22, 2011, Mora filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC). Specifically, her charge alleged the following:

I.      On or about October 30, 2011, I told my supervisor, Danny Silva, male, that starting February 2012 I was going to be stepping down from manager to clerk. Immediately after I told Mr. Silva about my intentions to step down, he began harassing and intimidating me about everything. From about December 03, 2011 to now, Mr. Silva has given me three written warnings without a legitimate reason. Mr. Silva's intentions are to get me discharged because of my sex, female.

II.     No legitimate reasons are given.

III.    I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Part of Mora's EEOC investigation file includes "Charge Detail Inquiry Intake Notes" that read:

[Mora] stated that about October 30, 2011, she told her supervisor, Danny Silva, male, that starting February 2012 she was going to be stepping down from manager to clerk. [Mora] claims that she told him that she was going to begin her own business therefore would be leaving the store at one point. [Mora] claims that she wanted to step down to clerk because of her future plans of opening her own business. [Mora] then claims that immediately after she told Mr. Silva about her intentions to step down and her own business, he began harassing and intimidating her about everything. [Mora] claims that he would yell at her in front of customers. I asked her what would he say and she just said about store issues but nothing really discriminatory. [Mora] then stated that from about December 03, 2011 to present Mr. Silva has given her three written warnings, one for tardiness, whom she claims is true; two for not reporting gasoline, [Mora] could not explain that to me and three because the food in the fridge was bad. [Mora] claims that she was not in charge

2

of the store on that day the food went bad and that her assistant was in charge. I asked [Mora] if that assistant was her subordinate and she said yes. I then asked if Mr. Silva is like that with everyone as to the harassment and intimidation and she said yes. I then explained to her about our statutes and asked her in what way did she feel discriminated against. [Mora] the[n] stated that Mr. Silva's intentions are to get her discharged because of her sex, female. I asked [Mora] if there was a tangible action and she said no. I then asked her if she reported the harassment to anyone else including HR and she said no. I explained to [Mora] that there was insufficient evidence to establish a prima facie case; however she had the right to file a charge of discrimination. [Mora] decided to proceed with the charge.

On January 11, 2012, the EEOC issued its dismissal and notice of right to sue.

### SCS Fires Mora

On February 27, 2012, SCS terminated Mora's employment. SCS based the termination on Mora cashing money orders for a store deposit. Mora, however, claims that she was following Silva's orders and he directed her to cash the money orders.

### Mora Files this Lawsuit

On September 6, 2013, Mora filed suit against SCS.[2] Both her original and first amended petitions allege claims of sexual harassment by Silva dating back to 2009. Specifically, Mora alleged that Silva made sexual advances toward her and later frequently insulted her for not yielding to such advances, calling her "useless" and telling her that she "was not pretty anymore" whenever she refused his sexual overtures. Mora also alleged that she tried to transfer to a different store but was told she needed to demote herself to be eligible for a transfer. When she informed Silva that she was stepping down as a manager to resume a position as a clerk, Silva allegedly retaliated against her for expressing an intent to transfer to another store, and for not yielding to his sexual advances. Specifically, he reprimanded her on at least three separate occasions between December 11 and 22, 2011. The lawsuit also alleges that Mora "was terminated because she

---

[2] On August 28, 2013, the TWC issued Mora its notice of right to file a civil action on her charge.

3

refused to capitulate to Supervisor Silva's sexual advances, and in retaliation for protected activity under the law."

## Proceedings Below

SCS answered the lawsuit and filed a plea to the jurisdiction contending that it was not until the filing of her lawsuit that Mora made any claim of unwelcome sexual harassment and retaliation. As a result, SCS argued that because Mora failed to include her claims of sexual harassment and retaliation in her charge of discrimination, she did not exhaust her administrative remedies thereby preventing the trial court from exercising its jurisdiction over the claims. The trial court denied SCS's plea to the jurisdiction but later granted its motion for permissive appeal. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(d)(West Supp. 2017)(trial court in a civil action may permit an appeal from an otherwise unappealable interlocutory order if it "involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation.").

On appeal, SCS contends that the trial court erred in denying its plea to the jurisdiction because Mora failed to exhaust her administrative remedies when she failed to include both her sexual harassment and retaliation claims in her original charge. While SCS presents these arguments in a sole issue, we will address the sexual harassment and retaliation claims separately.

## PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of a cause of action. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see Texas Department of Transp. v. Jones*, 8 S.W.3d 636, 637-38 (Tex. 1999). We review the issue of whether a trial court has subject matter jurisdiction *de novo*.

4

*Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004); *State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

When a plea to the jurisdiction challenges the sufficiency of the pleadings, we determine whether the plaintiff has met that burden by pleading facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In doing so, we construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, then the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 226-27.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to the extent necessary to resolve the jurisdictional issues raised, just as the trial court is required to do. *Miranda*, 133 S.W.3d at 227. When a plea to the jurisdiction includes evidence, and the jurisdictional challenge implicates the merits of the plaintiff's cause of action, the trial court will review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 227. If the evidence illustrates a fact question regarding the jurisdictional issue, a plea to the jurisdiction may not be granted and the fact finder should resolve the fact issue. *Id.* at 228. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the plea to the jurisdiction may be ruled on as a matter of law. *Id.*

**EXHAUSTION OF ADMINISTRATIVE REMEDIES CLAIMS**

Chapter 21 of the Texas Labor Code addresses employment discrimination. TEX.LAB.CODE ANN. §§ 21.001-556 (West 2015).[3] The Act makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. *Id.* at §21.051. The Act is modeled on federal law and executes the purposes of Title VII of the Civil Rights Act of 1964. *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.--El Paso 1997, pet. denied). Accordingly, we may consider federal law that interprets analogous Title VII provisions. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012)("[W]e consider the plain terms of the [Labor Code] and our precedent, and look to federal law for guidance only when the relevant provisions of Title VII are analogous.").

A person claiming a violation of the Act must first exhaust her administrative remedies prior to bringing a civil action. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475 (Tex.App.--El Paso 2013, pet denied). Exhausting administrative remedies is a "mandatory prerequisite" in Texas. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010). Recent Fifth Circuit precedent describes the analogous Title VII requirement as a "prudential prerequisite" that similarly can result in the dismissal of a suit. *Davis v. Ft. Bend County*, 893 F.3d 300, 308 (5th Cir. 2018)("Title

---

[3] Prior case law referred to these sections as the Texas Commission of Human Rights Act or TCHRA for short. *See e.g*. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *El Paso County v. Vasquez*, 508 S.W.3d 626, 633 (Tex.App.--El Paso 2016, pet. denied). Subsequent legislation abolished the Texas Commission on Human Rights and transferred its powers and duties to the Texas Workforce Commission Civil Rights Division. *See* Act of June 18, 2003, 78th Leg., R.S., ch. 302, § 1, 2003 TEX.GEN.LAWS 1279 (codified at TEX.LAB.CODE ANN. § 21.0015 (West 2015)).

VII's administrative exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite under our binding precedent, [which can be forfeited when not timely raised].").

To bring a lawsuit for unlawful employment practices, a plaintiff must first have filed an administrative charge with the EEOC or the TWC. *Williams*, 313 S.W.3d at 804-05; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex.App.--Austin 2009, no pet.). A plaintiff must file her charge within 180 days of the alleged discriminatory practice and any late-filed charge will be dismissed as untimely. TEX.LAB.CODE ANN. §§ 21.201, 21.202. This process affords the opportunity for informal investigation of the allegation while reducing costly litigation. *See El Paso County v. Navarrete*, 194 S.W.3d 677, 683-84 (Tex.App.--El Paso 2006, pet. denied); *Czerwinski v. Univ. of Tex. Health Sci. Ctr. at Houston Sch. of Nursing*, 116 S.W.3d 119, 121 (Tex.App.--Houston [14th Dist.] 2002, pet. denied). In short, unless and until an employee timely submits her complaint against her employer to the EEOC or TWC in the form of a charge of discrimination, Texas courts are barred from adjudicating that complaint. *See Schroeder*, 813 S.W.2d at 485-89; *Navarrete*, 194 S.W.3d at 683.

A plaintiff's subsequent lawsuit "may raise only the specific issue[s] made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'" *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex.App.--Fort Worth 2000, pet. denied), *quoting Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). Because many complaints are made by workers unfamiliar with the technicalities of formal pleadings, courts construe the initial charge liberally and "look slightly beyond its four corners, to its substance rather than its label." *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

However, courts will not construe the charge to include facts that were initially omitted. *See County of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *4

7

(Tex.App.--Austin May 17, 2012, no pet.)(mem. op.), *citing Harris v. Honda*, 213 F.App'x 258, 261 (5th Cir. 2006). The charge must contain an adequate factual basis to put the employer on notice of the existence and nature of the claims against it. *See Santi v. Univ. of Tex. Health Science Ctr. at Houston*, 312 S.W.3d 800, 805 (Tex.App.--Houston [1st Dist.] 2009, no pet.). A lawsuit under the Act will be limited in scope to only those claims that were included in a timely administrative charge and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge. *See City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581-82 (Tex.App.--Houston [14th Dist.] 2014, no pet.); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475-76 (Tex.App.--El Paso 2013, pet. denied).

Thus, Mora's claims may include those stated in her charge and factually related claims that could reasonably be expected to fall within the agency's investigation of the claims stated in the charge. *Fine*, 995 F.2d at 578; *Lopez v. Texas State Univ.*, 368 S.W.3d 695, 710 (Tex.App.--Austin 2012, pet ref'd); *Poindexter*, 306 S.W.3d at 810; *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex.App.--Houston [14th Dist.] 1999, no pet.). The issue, then, is whether the factual allegations in Mora's original charge could reasonably give rise to an investigation of her claims of sexual harassment and retaliation.

**The Sexual Harassment Claim**

SCS first contends that Mora failed to exhaust her administrative remedies because her charge states a bare-bones claim for sex discrimination and contains no factual allegations of discrimination based on a sexual harassment hostile work environment. In response, Mora maintains that her sexual harassment hostile work environment claim is reasonably expected to grow out of the investigation of the claims stated in her charge.

8

On her original charge, in the space entitled "Discrimination Based On (Check appropriate box(es)," Mora checked only the box labeled "sex." She also checked the "continuing violation" box. It is clear that the boxes the employee checks are not dispositive as to the nature of the claim. *See Sanchez v. Stand. Brands, Inc.*, 431 F.2d 455, 457 (5th Cir. 1970)(crucial element of charge is factual statement; selection of type of discrimination is merely attachment of legal conclusion to facts alleged); *Lopez*, 368 S.W.3d at 710. Instead, we must examine the particulars of the charge.

A vague or circumscribed EEOC charge cannot satisfy the exhaustion requirement for claims it does not fairly embrace. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C.Cir. 1997), *citing Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989). While every detail of the complaint need not be presaged in the EEOC filing, the substance of the claim still must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Marshall*, 130 F.3d at 1098, *citing Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995).

Here, Mora provided nothing more than the cursory statement, "I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended." Under the space entitled "Dates(s) Discrimination Took Place," she noted that December 3, 2011 was the earliest date the discrimination took place. After evaluating the charge, the factual allegations contained therein, and the charge detail inquiry notes, we cannot conclude that the Charge contains an adequate factual basis to put SCS on notice of the existence and nature of Mora's sexual harassment hostile work environment claim as alleged in her petition.

9

The charge did not contain any reference to discriminatory treatment based on a sexual harassment hostile work environment claim. Although it mentioned the word "harassment" generally, it contained no suggestion that the harassment was based on the sexual advances Silva made toward her and the insults she received as a result of not yielding to his alleged advances, some of which, according to Mora, date all the way to 2009. *See Manion*, 2012 WL 1839399, at \*6 (charge that stated only a claim for retaliation and contained no factual allegations of discrimination or hostile work environment based on gender could not support suit based on the later theories); *see also Harris-Childs v. Medco Health Solutions, Inc.*, 169 F.App'x 913, 916 (5th Cir. 2006)(per curiam)(not designated for publication)(complaints of "unfair treatment" and "harassment" did not put employer on notice that complaint was based on racial or sexual discrimination); *Anderson v. Limestone County*, No. 10-07-00174-CV, 2008 WL 2629664, at \*12 (Tex.App.--Waco Jul. 2, 2008, pet. denied)(vague allegation of "disparate" or "unfair" treatment did not allege gender discrimination); *cf*. *Hoffmann-La Rouche Inc. v. Zeltwanger*, 144 S.W.3d 438, 444 (Tex. 2004)(detailed description in EEOC charge of manager's inappropriate comments and actions allowed for prosecution of sexual harassment claim).

Mora urged at oral argument a standard that would have us consider what questions the EEOC should have asked in their investigation, and the information those questions would have elicited. Here for instance, Mora claims that if she was asked why she self-demoted, then she would have disclosed the alleged history of sexual harassment by her supervisor. While that standard is akin to what should "grow out" of the agency investigation, we also must consider whether the claims are factually related, and here they are not. One claim was a sexual discrimination claim that began in November 2011 and included three warnings from her supervisor. The claim she now wants to pursue involves requests for sex that go back to 2009.

10

Moreover, in this case we need not speculate about the questions that the EEOC asked and the answers given because the investigator's notes are included in the record. Mora and the EEOC investigator did discuss why Mora self-demoted: the claim notes recite "[Mora] claims that she wanted to step down because of her future plans of opening her own business."

In the same notes, Mora described Silva as "harassing and intimidating [her] about everything." However, when the EEOC specifically inquired into what Silva would say to Mora on these occasions, she replied, that it had to do with store issues "but nothing really discriminatory." The three warnings discussed in her charge, which she alleged were given to her for no legitimate reason, were all accounted for and discussed in the charge detail inquiry notes. For example, Mora explained that the first written warning she received was for tardiness, which she admitted was true. Her second written warning concerned the failure to report gasoline, and Mora declined to elaborate on this warning. And finally, Mora discussed how Silva gave her a third written warning because food had spoiled in the store refrigerators. Mora claimed that she was not the employee in charge of the store on the day the food spoiled, but rather, it was her assistant who was in charge. But when asked if that assistant was Mora's subordinate, she replied, yes. When questioned about her statement, "Mr. Silva's intentions are to get me discharged because of my sex, female," Mora was unable to give any tangible action or example. If some of Silva's alleged conduct occurred as early as 2009 and continued until the date Mora filed her 2011 charge, then that conduct would have been included in her 2011 charge. We thus conclude that Mora's claims in her petition could not reasonably be expected to grow out of the EEOC's investigation of the claims and factual allegations stated in her charge. Issue One as it relates to the sexual harassment claim is sustained.

**The Retaliation Claim**

In her petition, Mora also claimed SCS terminated her employment in retaliation for: (1) for not yielding to Silva's sexual advances; and (2) because she filed a charge of discrimination with the EEOC. Again, SCS argues that Mora failed to exhaust her administrative remedies because her charge states only a bare-bones claim for sex discrimination and contains no claims or factual allegations based on retaliation. Of course, at the time Mora filed her original charge, she had not yet been terminated. And there's the rub.

Retaliation is a distinct theory of liability that is not encompassed by other theories of discrimination. *Poindexter*, 306 S.W.3d at 809 ("Retaliation is a different legal theory from race-based discrimination."); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex.App.--Texarkana 2001, no pet.)("Retaliation is an independent violation of the TCHRA and occurs when an employer retaliates or discriminates against a person who makes or files a charge or files a complaint."). To state a cognizable claim of retaliation, Mora must have engaged in one or more of the following protected activities: (1) opposed a discriminatory practice; (2) made or filed a charge; (3) made or filed a complaint; or (4) testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. TEX.LAB.CODE ANN. § 21.055; *see also Lopez v. Texas State Univ.*, 368 S.W.3d 695, 710 (Tex.App.--Austin 2012, pet ref'd).

That Mora did not check the "retaliation" box on her charge form is not dispositive; what matters are the allegations of fact contained in the charge. *See Sanchez*, 431 F.2d at 462-64. Still, some allegation of retaliation is generally required. In *Davis*, for instance, the claimant filed an EEOC charge against her employer alleging disability discrimination and sexual harassment, but she then sued on a theory of retaliation. 62 S.W.3d at 892. The trial court granted summary

judgment against the claimant, and the court of appeals affirmed, holding that a claimant must exhaust administrative remedies "even in retaliation cases." *Id.* at 894.

**Does the *Gupta* Exception Still Exist, and More Importantly, Does it Even Apply?**

Mora counters that an exception to this rule as enunciated in the *Gupta v. East Tex. State Univ.*, 654 F.2d 411 (5th Cir. 1981) applies here. The *Gupta* exception excuses the exhaustion requirement for a retaliation claim when it grows out of a previously filed EEOC, so long as the alleged retaliation occurred after the filing of the EEOC charge. *Id.* at 414. Conversely, SCS contends in part that the United States Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) has abrogated the *Gupta* exception. *Morgan* stands for the proposition that each discrete incident of discriminatory or retaliatory action by an employer constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Id*. at 110-13, 122 S.Ct. at 2070-72. We begin with *Gupta*. Gupta brought suit alleging that his former employer discriminated against him on the basis of national origin and religion. 654 F.2d at 412. Relevant here, Gupta argued on appeal that the trial court erred in failing to find that he was also discharged in retaliation for filing charges with the EEOC and for bringing his lawsuit. *Id.* Gupta had been terminated *after* his national origin and religion lawsuit was already filed, and he did not make a separate charge of discrimination based on retaliation. *Id.* at 413. The employer claimed that failure precluded any consideration of the retaliation claim. *Id.*

The Fifth Circuit, however, held that is was unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim that grows out of an earlier filed charge. *Id*. at 414. *Gupta*'s holding is policy based. It is the nature of the retaliation claims that they arise after the filing of the EEOC charge. *Id*. Requiring prior resort to the EEOC would mean that two

13

charges would have to be filed in a retaliation case, a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. *Id.*

*Morgan* followed in 2002. In that case the U.S. Supreme Court reviewed a Ninth Circuit case allowing a worker to sue over discrete acts of discrimination that occurred before, and outside the time-period for pursuing an administrative charge, so long as one discrete act was timely raised in a charge of discrimination. *Morgan*, 536 U.S. at 106, 122 S.Ct. at 2068. Under existing Ninth Circuit precedent, pre-limitation and post-limitation incidents that were sufficiently related could both be pursued under a "continuing violation" theory. *Id.* at 106-07, 122 S.Ct. at 2069.

The Supreme Court affirmed in part and reversed in part, holding that while the continuing violation theory applies to hostile work environment claims, it does not toll the statute of limitations for claims based on discrete discriminatory and retaliatory acts. *Id.* at 122, 122 S.Ct. at 2077. The court announced that "discrete discriminatory [and retaliatory] acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." The Court went on to note that it is "easy to identify" discrete acts, which include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114, 122 S.Ct. at 2072.

Following *Morgan*, and based on its language addressing discrete acts, several circuit courts of appeals have considered whether any *Gupta* type exception still exists.[4] Panels within the Fifth Circuit have raised, but not answered, the question of whether *Morgan* precludes the

---

[4] *See Green v. Postmaster Gen. of U.S.*, 437 F.App'x 174, 178 (3d Cir. 2011)(unpublished)(holding that employee's retaliatory transfer was not properly before the court because it was a discrete act occurring after she received her right-to-sue letter on her failure-to-promote complaint); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009) (holding that *Morgan* did not abolish a *Gupta*-like exception); *Wedow v. City of Kansas City, Mo.,* 442 F.3d 661, 673-75 (8th Cir. 2006)(noting the continuation of its narrow *Gupta* like exception); *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)(concluding exception not viable after *Morgan*).

*Gupta* exception.[5]  Several district courts within the Fifth Circuit have also raised that question, but largely concluded that they are bound by *Gupta* until it is formally overruled.[6]  Two Texas Court of Appeals have continued to follow *Gupta*.  *Metro. Transit Auth. of Harris County v. Douglas*, 544 S.W.3d 486, 498 (Tex.App.--Houston [14th Dist.] 2018, pet. filed)("We join the many courts that have declined to extend the holding in *Morgan* to envelop retaliatory acts growing out of an earlier filed EEOC charge."); *San Antonio Water Sys. v. Odem*, No. 04-07-00130-CV, 2007 WL 2376147, at \*2 (Tex.App.--San Antonio Aug. 22, 2007, no pet.)(mem. op.)("*Morgan* is distinguishable from *Gupta* because in *Morgan*, the court applied the Title VII limitations period to *pre*-charge retaliatory acts and held those acts time-barred, whereas in *Gupta*, the court addressed the viability of *post*-charge retaliatory acts that grew out of an earlier charge.");

Ultimately, the question of whether *Morgan* invalidates *Gupta* is not germane to our resolution of this case because the *Gupta* exception is narrow and limited, and subsequent Fifth Circuit case law make it inapplicable to the particular circumstances of this case.  Specifically, the Fifth Circuit has held that when an employer's action, such as a discharge, is claimed to have resulted *both* from discrimination and retaliation, then the *Gupta* exception cannot save the retaliation claim.  *Simmons-Myers v. Caesars Entm't Corp.,* 515 F.App'x 269, 273 (5th Cir.) *cert. denied,* 571 U.S. 823, 134 S.Ct. 117, 187 L.Ed.2d 36 (2013).  And Mora's petition specifically

---

[5] *See Simmons-Myers v. Caesars Entertainment Corp.*, 515 F.App'x 269, 273 n.1 (5th Cir. 2013)(unpublished); *Sapp v. Potter*, 413 F.App'x. 750, 753 (5th Cir. 2011)(unpublished)

[6] *Griggs v. University Health System*, Civil No. SA-06-CA-0384-XR, 2007 WL 708608, at \*2-3 (W.D. Tex. Mar. 7, 2007)(distinguishing *Morgan* and ultimately concluding that it would continue to follow *Gupta* until and unless the Fifth Circuit holds that *Gupta* is no longer good law): *Stevenson v. Verizon Wireless (VAW) LLC*, No. CIV.A.3:08CV0168G, 2009 WL 129466, at \*4-5 (N.D. Tex. Jan. 16, 2009)("Currently, the Fifth Circuit holding in *Gupta* still stands."); *Fischer v. Donahoe*, No. 3:15-CV-0881-D, 2016 WL 1028127, at \*2-3 (N.D. Tex. Mar. 15, 2016)(In a footnote, stating "[u]ntil the Supreme Court or Fifth Circuit reassess the holding of *Gupta*, this court is bound to follow it."); *Taylor v. Texas Southern University (TSU)*, No. 4:12-CV-01975, 2013 WL 5410073, at \*5 n.4 (S.D. Tex. Sept. 25, 2013)(questioning the continuing vitality of the *Gupta* exception, but ultimately concluding that it still remains the law of the Circuit.); *Powell v. Akin Gump Strauss Hauer Feld LLP*, 3:17-CV-1726-K-BH, 2018 WL 2056196, at \*5 (N.D. Tex. Apr. 18, 2018)(same).

15

claims her termination was based *both* on retaliation for filing the charge of discrimination, and the sexual harassing conduct of her supervisor, Silva.

The Fifth Circuit discussed this twist to *Gupta* in *Simmons-Myers*. In that case, an employee first contended her supervisor harassed her through several poor performance reviews. *Id*. at 271. She claimed the supervisor did not treat her the same as similarly situated males. *Id*. The employee filed a discrimination charge with the EEOC asserting sex discrimination. *Id*. After she had requested a right to sue letter based on that claim, the company terminated her in a company-wide reduction in force. *Id*. Without filing another administrative charge raising the termination, she filed suit alleging: (i) discrimination based on race (ii) discrimination based on gender and (iii) retaliation. *Id*. The trial court granted summary judgment based on a failure to exhaust the Title VII claims. *Id*. The race claim was not factually related to the earlier gender discrimination claim. *Id*. The gender and retaliation claim germane to the termination had not ever been presented to the EEOC. *Id*.

The Fifth Circuit agreed that all those claims should be dismissed. "Her termination was a separate employment event for which Simmons-Myers was required to file a supplemental claim, or at the very least, amend her original EEOC charge." *Id*. The *Simmons-Myers* court specifically concluded that the *Gupta* exception did not apply. "But this court has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged." *Id*., *citing Scott v. Univ. of Miss.,* 148 F.3d 493, 514 (5th Cir. 1998)(holding that *Gupta* "is limited to retaliation claims due to the special nature of such claims"), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); and *Sapp v. Potter,* 413 F.App'x 750, 752-53 (5th Cir. 2011)("Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both

16

retaliation and discrimination are alleged.").

The court noted the peculiar policy twist when both a retaliation and discrimination lead to a subsequent discrete act, such as a termination. "Simmons-Myers would be required to return to the EEOC and exhaust her administrative remedies with respect to her discrimination claim, while proceeding with litigation on her retaliation claim. Permitting simultaneous proceedings such as these for the same inciting event would 'thwart the administrative process and peremptorily substitute litigation for conciliation.'" *Id.*, *quoting McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008). Several district courts have subsequently applied *Simmons-Myers* when a plaintiff alleges an adverse employment action that results from both retaliation and a discrimination motive. *See Martin v. Winn-Dixie Louisiana, Inc*., 3:13-CV-00682-JWD, 2015 WL 1281943, at *6 (M.D. La. Mar. 20, 2015)("In her Complaint, Plaintiff alleged discrimination based on her gender, retaliation, and wrongful discharge. . . . Given the factual similarities of this case with *Simmons-Myers,* this Court holds that the factual allegations contained within the EEOC charge were insufficient to put Defendant on notice of a wrongful termination claim."); *Reyes v. Tidewater Inc*., CV 17-17739, 2018 WL 1757387, at *2 (E.D. La. Apr. 12, 2018)("But the Fifth Circuit has held that the *Gupta* exception does not apply when a plaintiff alleges that the same adverse employment action was the result of both discrimination and retaliation."); *Ekaidi v. Bd. of Supervisors of the S. U. System*, CV 16-7523, 2017 WL 699821, at *4 (E.D. La. Feb. 22, 2017) ("If the plaintiff's complaint alleges that an adverse employment action was taken not only as retaliation but also as a form of discrimination, dismissal of the discrimination claim and the retaliation claim is required."); *Phipps v. Hous. Auth. of New Orleans*, CA 15-3296, 2016 WL 164916, at *4 (E.D. La. Jan. 13, 2016), *appeal dismissed* (Apr. 21, 2016)("Because the plaintiff's second charge is not limited to a retaliation claim arising out of his first discrimination charge, but

17

instead additionally includes new charges of disparate treatment, *Gupta* does not save these claims from the exhaustion requirement. Accordingly, the plaintiff's discrimination and retaliation claims arising from his second EEOC charge must be dismissed without prejudice as premature."); *Cf. Mitchell v. U. of Louisiana System*, 154 F.Supp.3d 364, 402 (M.D. La. 2015)(distinguishing *Simmons-Myers* because the plaintiff in that case did not claim that that the discrete act was "due to disparate treatment *and* due to retaliation.").

Mora claims that the *Simmons-Myers* line of cases does not apply here because "Mora is not asking that the court apply the *Gupta* exception to her hostile work environment sex discrimination claim, but only to her retaliation claim." That argument misses the point. Once Mora's petition claimed the termination resulted from *both* retaliation and the sexual harassment, the *Gupta* exception no longer applies.

Finally, we note that Mora's petition could also be read in part to claim that three write-ups she was given in December 2011 were in retaliation for Mora seeking a transfer. That alleged retaliation, however, occurred before she filed her charge of discrimination, and would not be covered by the *Gupta* exception in any event. She claimed that Silva retaliated against her for making known her desire to transfer stores, and she did so in November 2011. Silva took three specific acts against her in December 2011 up to the time she filed her charge on December 22, 2011. The *Gupta* exception, even if is still good law, does not apply to retaliatory actions occurring before the filing of the charge. *See Eberle v. Gonzales*, 240 F.App'x 622, 2007 WL 1455928, at *5 (5th Cir. May 18, 2007); *Jones v. City of Dallas, Texas*, 3:16-CV-2303-S, 2018 WL 2417853, at *4 (N.D. Tex. May 29, 2018); *Phongsavane v. Potter*, No. SA-05-CA-0219-XR, 2006 WL 2706786, at *9-10 (W.D. Tex. Sept. 18, 2006).

We therefore reverse the trial court's denial of the plea to jurisdiction and render judgment

18

dismissing the suit for lack of subject-matter jurisdiction.


August 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senor Judge) sitting by assignment