Opinion issued December 5, 2023



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-22-00593-CV

————————————

**LORETT CUADRA, Appellant**

**V.**

**DECLARATION TITLE COMPANY, LLC, Appellee**

---

**On Appeal from County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1144465**

---

## O P I N I O N

In her suit against her former employer—appellee Declaration Title Company, LLC (DTC)—appellant Lorett Cuadra alleged a cause of action for retaliation under the Texas Commission on Human Rights Act (TCHRA). In her administrative complaint to the Texas Workforce Commission (TWC) and her

petition in the trial court, Cuadra alleged that DTC fired her in retaliation for reporting an incident of sexual harassment. At trial, she submitted two claims of retaliation to the jury—one based on her report of sexual harassment and a second based on her expressed intention to file a complaint with the Equal Employment Opportunity Commission (EEOC). The jury rejected her claim based on the report of sexual harassment but found in her favor on the second claim based on her intention to file a complaint with the EEOC.

DTC moved for judgment notwithstanding the verdict (JNOV), arguing, in relevant part, that the trial court should disregard the jury's finding on Cuadra's second retaliation claim because (1) Cuadra failed to include that claim in her charge filed with the TWC, thereby failing to exhaust her administrative remedies on that claim; (2) Cuadra failed to plead that claim in her petition in the trial court; and (3) the evidence was legally insufficient to support the jury's finding. The trial court granted the JNOV and rendered a take-nothing judgment on Cuadra's claims.

In her sole appellate issue, Cuadra argues that the trial court erred in granting DTC's motion for JNOV. We conclude that Cuadra failed to exhaust her administrative remedies with regard to the only claim on which the jury found in her favor, and so we affirm.

2

## Background

DTC is a title company owned by Rick Heil and Julio Fernandez. Heil and Fernandez hired Cuadra and eventually promoted her to manager of DTC's Memorial branch. On November 29, 2018, another DTC employee, Lani Almaguer, reported to Cuadra as her manager that she had an uncomfortable interaction with the janitor. Almaguer testified about the incident with the janitor:

> I was going to leave the office and he grabbed my hands and was holding them tight and was talking about going to this restaurant bar across the street but not telling any of the other employees. And I asked why and he said because they might want to go. And I kept trying to pull my hand away and I kept saying I need to go, I need to go. And then finally I was able to get my hand free and then I left.

Cuadra in turn reported the janitor to Fernandez for sexual harassment. DTC fired the janitor on December 3, 2018.

Cuadra asserts that Heil and Fernandez began retaliating against her on December 4, 2018, when Heil told her she was performing poorly. Cuadra testified that this was the first time either Heil or Fernandez had ever told her that there was a problem with her performance. Cuadra asserted that DTC increased its scrutiny on her work and began criticizing her performance.

On December 13, 2018, Cuadra complained to DTC's vice president, Mai Tran, that she believed that the additional training and scrutiny of her work was retaliation for reporting the janitor's sexual harassment of Almaguer.

On January 7, 2019, Cuadra emailed Heil explaining that she felt the work environment was "altered and strained" after she reported the janitor's actions, and the increased scrutiny of her work was "demeaning and stressful." Cuadra took medical leave on the advice of her doctor, and the doctor extended her medical leave through January 28, 2019. Cuadra did not return to work on January 28, 2019, but remained on medical leave through the first half of February. Other employees of DTC were required to cover Cuadra's responsibilities.

On February 15, 2019, Cuadra again emailed Heil. She told DTC that she had not "abandoned her position with the company" and that she would be returning to work on February 18, 2019. She stated that she was seeking "reasonable accommodations and assurances from the company that I would be able to work in an environment free from harassment." Finally, Cuadra stated, "Also, please know that since you have not properly corrected my past concerns, I will be filing a complaint with the Equal Employment Opportunity Commission so that they can investigate my issues and provide you with guidance on how to protect employees."

On February 19, 2019, Cuadra provided DTC with a letter from her doctor that included certain restrictions on her working conditions, including that she always have a third party present during meetings and that she not be required to drive to other locations. Heil testified that these restrictions made it impossible for

4

Cuadra to do her work as the branch manager, and he decided to move forward with his decision to terminate her. DTC sent an email and letter terminating Cuadra's employment with DTC on February 19, 2019.

On February 22, 2019, Cuadra filed a charge of discrimination with the TWC complaining of retaliation. In the charge, she recounted the facts surrounding her report to DTC regarding the janitor's actions toward Almaguer. She then asserted that, a few days after making her report, she had a meeting with Heil to "discuss annual profits and losses at the Memorial branch" and was "told that the branch was not profitable and could not continue to lose money." She stated that, prior to this meeting, she had not been told that DTC was dissatisfied with her performance, nor had she received any verbal or written warnings. Cuadra stated in her TWC complaint that DTC required additional training for her branch, that another DTC employee was assigned to give additional "scrutiny" to her work, and that she eventually went on medical leave "due to the overwhelming anxiety caused by DTC's retaliation and harassment." She asserted:

> On February 15, 2019, I informed Mr. Heil that I was returning to work as I could no longer afford for DTC to withhold business expenses and commissions owed to me. Per DTC's request, I provided a note from my physician to DTC on February 19, 2019, releasing me to resume work on February 20, 2019. I was terminated by Mr. Heil within hours of providing the work release note from my physician.

She asserted that "DTC's actions constitute[d] retaliation for reporting sexual harassment, in violation of Title VII and Chapter 21 of the Texas Labor Code."

5

The TWC dismissed Cuadra's complaint and issued a right-to-sue letter. The TWC investigator recounted in his report the relevant facts, including Cuadra's report of the janitor's conduct, the subsequent increased training and scrutiny of Cuadra's work, and her medical leave. The investigator noted that Cuadra informed DTC she was returning to work on February 15, 2019, she provided DTC a note from her physician on February 19, 2019, and DTC discharged her on February 19.

Cuadra filed suit against DTC on October 31, 2019. She alleged a cause of action for retaliation pursuant to the TCHRA. In her petition, she alleged facts relevant to that claim, asserting that DTC was initially pleased with her work. Then she reported the sexual harassment incident with the janitor, and Heil and Fernandez began treating her differently. She detailed the increased scrutiny her work received from other DTC personnel, and the necessity of taking medical leave. Cuadra alleged that, on February 15, 2019, she informed Heil "that she wished to return to work in an environment free from harassment and retaliation and requested reasonable accommodations to attend doctor's appointments." She asserted that she "provided a doctor's work release as requested by DTC on the afternoon of February 19, 2019" and "was terminated within hours of submitting the work release despite not having any documented disciplinary or performance issues." She asserted that DTC terminated her "in retaliation for reporting sexual

harassment," in violation of the TCHRA and that she suffered damages as a result of that retaliation.

During the pre-trial hearing, Cuadra sought to pre-admit evidence that she engaged in an additional protected activity, referencing the February 15 email in which stated her intention to make an EEOC complaint. DTC objected to this evidence, and it argued that Cuadra had not exhausted her administrative remedies on that claim. The trial court overruled DTC's objection and eventually granted a running objection to that line of evidence. DTC likewise raised a complaint regarding Cuadra's efforts to litigate that claim in a motion for directed verdict, which the trial court denied.

The trial court submitted two jury questions on Cuadra's claims of retaliation. In question one, the charge asked, "Did Declaration Title Company fire Lorett Cuadra because she opposed a discriminatory practice, because she reported that a janitor harassed an employee of Declaration Title Company?" The jury answered "No." In question two, the charge asked, "Did Declaration Title Company fire Lorett Cuadra because she opposed a discriminatory practice, because she told Declaration Title Company she would file a charge of discrimination?" The jury answered "Yes." The jury also made findings on damages based on its answer to question two, determining that Cuadra was entitled to $100,000 in backpay and $50,000 in future compensatory damages.

DTC then moved for JNOV, arguing in relevant part that (1) the trial court lacked jurisdiction over any claim that DTC fired Cuadra in retaliation for threatening to file an EEOC complaint because Cuadra failed to exhaust her administrative remedies with regard to that claim; (2) the trial court should not have submitted the jury question about retaliation over Cuadra's threat to file an EEOC complaint because the judgment must conform to the pleadings, and Cuadra failed to plead the claim; and (3) the evidence was legally insufficient to support the jury's finding that DTC retaliated against Cuadra for threatening to file an EEOC complaint.

The trial court granted DTC's motion for JNOV. It rendered a final judgment that Cuadra take nothing on her claims against DTC. This appeal followed.

**Exhaustion of Administrative Remedies**

In her sole issue, Cuadra argues that the trial court erred in granting DTC's motion for JNOV based, in relevant part, on DTC's argument that Cuadra failed to exhaust her administrative remedies. DTC asserted that Cuadra did not allege in her TWC complaint or in her trial court pleadings that DTC retaliated against her for threatening to make an EEOC complaint. Because she did not include those allegations or supporting facts in her TWC complaint, she did not exhaust her

administrative remedies, and the trial court lacked jurisdiction over that claim, making JNOV proper.

## A.     Standard of Review of JNOV

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury finding on an issue necessary to liability or if a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Jetall Companies, Inc. v. Plummer*, No. 01-18-01091-CV, 2020 WL 5900577, at *2 (Tex. App.—Houston [1st Dist.] Oct. 6, 2020, no pet.) (mem. op.). A directed verdict is proper (1) when the evidence conclusively establishes the movant's right to judgment or negates the opponent's right or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Jetall Companies*, 2020 WL 5900577, at *2. The trial court should grant a JNOV "when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery." *Jetall Companies, Inc.*, 2020 WL 5900577, at *2 (quoting *B & W Supply Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

We review the trial court's ruling on a motion for JNOV under a legal-sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005); *B & W*

9

*Supply*, 305 S.W.3d at 21. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014).

## B.    Scope of TWC Charge

Here, DTC argues that the trial court's grant of JNOV was proper because Cuadra failed to exhaust her administrative remedies with regard to her claim of retaliation for threatening to file an EEOC complaint, thereby depriving the trial court of jurisdiction over that claim.

A person claiming a violation of the TCHRA must first exhaust her administrative remedies prior to bringing a civil action. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010); *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied) ("The exhaustion of administrative remedies is a jurisdictional prerequisite to file suit for unlawful employment practices.") (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)); *Santi v. Univ. of Tex. Health Sci. Ctr.*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter

10

jurisdiction"). To exhaust administrative remedies under the TCHRA, a plaintiff must (1) file a complaint with the TWC within 180 days of the alleged discriminatory act; (2) allow the TWC 180 days to dismiss or resolve the complaint; and (3) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint was filed. *See* TEX. LAB. CODE §§ 21.202, .208, .254, .256. "The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute." *Lopez*, 368 S.W.3d at 701 (citing *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878–79 (5th Cir. 2003)).

It is undisputed that Cuadra filed a timely complaint with the TWC. The central issue is whether her claim for retaliation in response to her threat to file an EEOC complaint falls within the scope of the administrative charge she filed with the TWC. "It is well settled that the scope of Title VII and TCHRA litigation is limited to claims that were included in the administrative charge of discrimination and to factually related claims that could reasonably be expected to grow out of the

agency's investigation of the claims stated in the charge."[1] *Id.* (citing *Pacheco*, 448 F.3d at 789; *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 810 (Tex. App.—Austin 2009, no pet.); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.)); *see Santi*, 312 S.W.3d at 805 ("A lawsuit under the [TCHRA] is limited to claims made in the charge or complaint filed with the EECO or [TWC] and factually related claims that can reasonably be expected to grow out of the commission's investigation.") (citing *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied)).

Courts construe the administrative complaint liberally and "look slightly beyond its four corners, to its substance rather than its label" to determine the scope of the administrative investigation "which can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 788–89 & n.9; *City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581–82 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The Fifth Circuit has described the appropriate review as "a fact-specific inquiry" into what investigations the administrative charge "can reasonably be expected to trigger." *Pacheco*, 448 F.3d at 792. Although courts

---

[1] "Because the TCHRA was enacted in part to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments,' we look to relevant federal law for guidance when the relevant provisions of Title VII are analogous." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015) (citing TEX. LAB. CODE § 21.001(1); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)).

construe complaints filed under the TCHRA liberally, the charge "must contain a sufficient factual basis to put the employer on notice of the existence and nature of the charges." *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475 (Tex. App.—El Paso 2013, pet. denied); *Santi*, 312 S.W.3d at 805; *Bartosh*, 259 S.W.3d at 321. "The crucial element of a charge of discrimination is the factual statement contained" in the administrative complaint. *Santi*, 312 S.W.3d at 805 (quoting *Bartosh*, 259 S.W.3d at 321). Courts will not construe the charge to include facts that were initially omitted. *Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 401 (Tex. App.—El Paso 2018, no pet.); *Cnty. of Travis ex rel. Hamilton v. Manion*, No. 03–11–00533–CV, 2012 WL 1839399, at *4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (citing *Harris v. David McDavid Honda*, 213 F. App'x 258, 261 (5th Cir. 2006) (per curiam) (not for publication)).

## C.    Analysis

Cuadra's claims against DTC are based on retaliation. The TCHRA prohibits employers from engaging in retaliatory action against an employee for opposing a discriminatory practice. *See* TEX. LAB. CODE §§ 21.051, 055(1). To establish a violation, the employee must show that (1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action. *Evans v. City of Hous.*, 246 F.3d 344, 352 (5th Cir. 2001); *Gonzalez v. Champion Techs., Inc.*, 384

S.W.3d 462, 472 (Tex. App.—Houston [14th Dist.] 2012, no pet.). An employee engages in a protected activity when she "opposes a discriminatory practice," "makes or files a charge," "files a complaint," or "testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE § 21.055.

In her complaint filed with the TWC, Cuadra related facts to support her claim that she engaged in a protected activity when she reported the sexual harassment incident between the janitor and Almaguer. She alleged facts supporting her claim that DTC retaliated against her following this report, including that DTC increased scrutiny over her work, required additional training, and began criticizing her work for the first time. She alleged that she was ultimately fired in retaliation for making the report of sexual harassment.

Cuadra did not, however, include any allegation or supporting facts indicating that she engaged in any additional protected activities or that DTC acted in retaliation after she related her intention to file an EEOC complaint. In her complaint to the TWC, Cuadra did not make any reference to the statement in her February 15 email that she intended to file an EEOC complaint, nor did she allege any facts supporting a causal connection between that statement and her subsequent termination. The TWC investigator did not reference that basis for retaliation in his report, and instead indicated that the investigation addressed

14

Cuadra's allegation that DTC retaliated against her for reporting the sexual harassment incident.

Accordingly, we conclude that Cuadra's subsequent argument at trial—that DTC retaliated against her in response to her statement that she intended to file an EEOC complaint—falls outside the scope of her TWC complaint, and, thus, that retaliation claim was not properly before the trial court. *See Sw. Convenience Stores*, 560 S.W.3d at 401 (holding that courts will not "construe the [administrative] charge to include facts that were initially omitted").

Cuadra argues on appeal that we must construe her TWC complaint and her original petition liberally, and she argues that her complaint was clear in alleging retaliation against DTC because DTC fired her. She argues, "Charging parties alleging retaliation in the form of a single adverse action are not required to spell out each and every time they engaged in a protected activity that led to the retaliation." We disagree.

Establishing retaliation under the TCHRA requires more than identifying an adverse employment action—the specific protected activity and a causal connection between the protected activity and the adverse employment action are likewise essential elements of a retaliation claim. *See, e.g.*, *Gonzalez*, 384 S.W.3d at 472 (setting out elements of TCHRA retaliation claim). Cuadra's claim that DTC fired her in retaliation for her report of the sexual harassment incident and her

15

claim that DTC fired her in retaliation for threatening to make an EEOC complaint involve materially different protected activities. Those two activities implicate the actions of different DTC employees and a different causal connection between the protected activity and the ultimate adverse employment action.

Cuadra argues that DTC "has always known that the February 15 email would be an important part of [her retaliation] claim." She points to the fact that DTC's lawyer questioned her about the email during her deposition, and she argues that she "should not be punished for DTC's failure to further explore Cuadra's threat to file an EEOC charge during her deposition or throughout the course of written discovery." We observe, however, that the TWC complaint and pleadings identify only the February 15 email as the method by which she informed DTC that she intended to return to work. Nothing in Cuadra's TWC complaint put either DTC or the TWC investigator on notice that the February 15 email was relevant as proof that she engaged in the protected activity of making an EEOC complaint. *See Lopez*, 368 S.W.3d at 701 (providing that purposes underlying administrative-complaint requirement include "giving the charged party notice of the claim" and "giving the administrative agency and the employer an opportunity to resolve the dispute").

Cuadra attempts to distinguish several of the cases relied upon by DTC, arguing that they are distinguishable on the facts. *See, e.g.*, *Manion*, 2012 WL

16

1839399, at *4–5 (considering case in which plaintiff filed suit alleging gender discrimination, hostile work environment, and retaliation for complaining of discriminatory treatment, but EEOC charge did not contain any factual allegations of discrimination or hostile work environment based on gender); *Sw. Convenience Stores*, 560 S.W.3d at 403–04 (concluding that plaintiff failed to exhaust administrative remedies on retaliation claim where EEOC charge contained no factual allegations based on retaliation, and concluding that plaintiff could not rely on exception that excuses exhaustion requirement for retaliation claim when it grows out of previously-filed EEOC complaint because alleged retaliation occurred *before* plaintiff filed EEOC complaint); *ATI Enters., Inc. v. Din*, 413 S.W.3d 247, 253–54 (Tex. App.—Dallas 2013, no pet.) (concluding that plaintiff failed to exhaust administrative remedies on retaliation claim where EEOC charge contained only allegation of discrimination based on national origin). But our review of this case requires a "fact-specific inquiry" into what investigations the administrative charge "can reasonably be expected to trigger." *See Pacheco*, 448 F.3d at 792. All of the cases cited above stand for the proposition that, while courts must construe the administrative complaint with utmost liberality, the complaint must nevertheless contain sufficient factual allegations to put the administrative agency and the employer on notice of the existence and nature of the charges. *See, e.g.*, *Sw. Convenience Stores*, 560 S.W.3d at 400–01 (recognizing that courts

17

construe initial charge liberally but "will not construe the charge to include facts that were initially omitted," and charge "must contain an adequate factual basis to put the employer on notice of the existence and nature of the claims against it").

We find the Austin Court of Appeals' opinion in *Lopez* to be instructive here. *See* 368 S.W.3d at 701–04. In that case, the court looked to the specific facts asserted in the administrative charge to determine which, if any, retaliation claims asserted at trial fell within the scope of the administrative charge. *Id.* at 701–02. The court observed that the employee's "factual statement referred only obliquely to retaliatory conduct by [the employer's] agents based on her decision to terminate [a subordinate's] employment," but, nevertheless, the allegation "would reasonably give rise to an administrative investigation of retaliation on that basis." *Id.* at 703. Thus, the employee "exhausted her administrative remedies as to her allegation that [the employer] retaliated against her for firing [her subordinate]." *Id.* at 703–04. The court further concluded, however, that "[t]he same cannot be said of the other alleged claims of retaliation" because they were "not mentioned in the charge and are not factually related to any of the claims stated in the charge." *Id.* at 704.

We reach a similar conclusion here. Cuadra's TWC charge did not mention her statement to DTC that she intended to file an EEOC complaint, nor did she allege any facts supporting a causal connection between her intention to make an

18

EEOC complaint and her subsequent termination. The only protected activity she identified was her reporting of the sexual harassment incident. She alleged that DTC began criticizing her performance and increased scrutiny over her work immediately following its firing of the janitor, requiring her to take an extended medical leave, and then it ultimately fired her in retaliation for reporting the sexual harassment. We will not construe Cuadra's TWC complaint to include facts that were omitted. *See Sw. Convenience Stores*, 560 S.W.3d at 401; *see also Pacheco*, 448 F.3d at 792 (holding that courts review scope of administrative complaint was "fact-specific" to determine what investigation that complaint "can reasonably be expected to trigger"). Cuadra's TWC complaint cannot reasonably be construed to have triggered an investigation into or provided notice of her retaliation claim against DTC based on her statement that she intended to file an EEOC complaint. She did not make any reference to that claim or supporting facts prior to the proceedings in the trial court. *See Lopez*, 368 S.W.3d at 703–04; *see also Phillips v. Caris Life Sciences, Inc.*, 715 F. App'x 365, 369 (5th Cir. 2017) (per curiam) (not for publication) (holding that employee failed to exhaust her administrative remedy for claim of sex-based discrimination when she complained to EEOC that she was fired for reporting sexual harassment, but did not allege that she was fired for being woman); *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007) (per curiam) (not for publication) (holding, where charge listed only

19

facts related to sexual conduct, that EEOC's investigation could not reasonably be expected to encompass employer's work assignment practices).

Because her claim of retaliation based on her statement that she would make an EEOC complaint falls outside the scope of her TWC complaint, Cuadra failed to exhaust her administrative remedies as to that claim. *See Santi*, 312 S.W.3d at 804–05. We conclude that the trial court properly disregarded the jury's finding on that claim. *See Jetall Companies*, 2020 WL 5900577, at \*2 (holding that JNOV is proper when legal principle precludes recovery).

We overrule Cuadra's sole appellate issue.

## Conclusion

We affirm the trial court's take-nothing judgment on Cuadra's claims against DTC.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.